[Crim. No. 11300. Third Dist. June 7, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
DANIEL JAY FADDLER et al., Defendants and Respondents.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Appellant.

Jimmy N. Yee, under appointment by the Court of Appeal, for Defendants and Respondents.

**OPINION**

**PUGLIA, P. J.**—Defendants were charged in two counts with (1) possession for sale and (2) transportation of marijuana (Health & Saf. Code, §§ 11359, 11360, subd. (a)). The superior court determined that evidence essential to support the magistrate's holding order was the product of an illegal search and seizure and granted defendants' motion

to dismiss the information (Pen. Code, § 995). The People appeal. (Pen. Code, § 1238, subd. (a)(8).) We shall reverse.

At the time of the alleged offenses, Sheriff's Deputy Brand was on patrol alone in a squad car. At about 2 a.m. he observed a vehicle being driven erratically. A passenger in the vehicle was leaning out of a window shouting and waving what appeared to be a whiskey glass. Officer Brand attempted to stop the vehicle to investigate a possible violation of Vehicle Code section 23102, subdivision (a) (driving under the influence of an intoxicant). His first effort to detain the vehicle was frustrated when the driver, having pulled over and stopped on the officer's command, resumed travel as Brand was exiting his squad car. As Brand again stopped the vehicle, another officer arrived to provide assistance.

There were three men in the car. Defendant Faddler was the driver; defendants Raymond Williams and Rodney Harold Balson were passengers. Brand ordered the occupants out of the vehicle and directed them to the rear of their automobile in front of his patrol car. Williams was slow to comply and appeared to be under the influence of an intoxicant. Balson was boisterous and "mouthy."

Brand asked Faddler for his driver's license. He advised it was in the glove compartment and started to move toward his car to retrieve the license. Brand ordered him to stay where he was and proceeded to the defendants' vehicle himself to obtain the driver's license from the glove compartment. Upon opening the front passenger door, Brand observed in plain view on the floorboard a baggie containing marijuana. Defendants were then arrested and placed in custody in the patrol vehicle. Following the arrests a search of defendants' car produced more marijuana.

It cannot be seriously disputed that Officer Brand's articulated suspicions reasonably warranted the detention of the defendants. (*In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].) Furthermore, the search of the passenger compartment of defendants' car following their arrest was clearly authorized if Officer Brand's initial observation of marijuana when he opened their car door as a first step to obtaining Faddler's license from the glove compartment was lawful. (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 562-566 [128 Cal. Rptr. 641, 547 P.2d 417].) Our analysis therefore will focus on Officer Brand's initial entry into defendants' car to secure the driver's license.

At the preliminary hearing the magistrate denied defendants' motion to suppress, commenting that "opening the door [to defendants' car] . . . clearly was a search." However, the magistrate believed the intrusion was justified under all the circumstances. The superior court took a somewhat different approach, holding consent to enter the glove compartment absolutely essential to a lawful search; finding no consent, the trial court dismissed the information.

■ For present purposes, we assume the correctness of the trial court's finding of a lack of consent. A converse finding of course would have validated Officer Brand's initial entry into defendants' vehicle. (See *People v. Smith* (1962) 210 Cal.App.2d 252, 256 [26 Cal.Rptr. 620].) We think, however, the trial court erred in rejecting the theory advanced by the People and accepted by the magistrate: that exigent circumstances justified the officer's entry of defendants' vehicle to retrieve the driver's license from the glove compartment.

Officer Brand had made a lawful stop of defendants' vehicle to investigate whether the driver was under the influence of an intoxicant. As the driver, defendant Faddler was required to have a valid driver's license (Veh. Code, § 12500, subd. (a)), to have that license in his immediate possession when driving and to present that license upon demand of a peace officer enforcing the traffic laws (Veh. Code, § 12951). As a peace officer engaged in a lawful detention investigating violation of the traffic laws, Officer Brand had a right to examine Faddler's driver's license.

In the ordinary situation where the safety of the officer or the public is not endangered thereby, a driver may himself retrieve and present his license for examination by an investigating police officer. That was not the situation here. The lateness of the hour, the presence of three men in the vehicle, the nature of the suspected violation and the conduct of the defendants together justified Officer Brand for his own safety ordering the occupants out of the vehicle and strictly controlling their movements during the remainder of the detention (*People v. Remiro* (1979) 89 Cal.App.3d 809, 829 [153 Cal.Rptr. 809, 2 A.L.R.3d 1135]). The identical considerations amply justified Officer Brand's decision to secure defendant Faddler's license himself rather than to permit him to separate from his companions and rummage about in his automobile, thereby diminishing the officer's control over a potentially dangerous situation and creating a potential threat to his safety and that of the

public. (*People* v. *Walker* (1969) 273 Cal.App.2d 720, 724 [78 Cal. Rptr. 439]; see *Jackson* v. *Superior Court* (1977) 74 Cal.App.3d 361, 368-369 [142 Cal.Rptr. 299].)

The trial court acknowledged the defendant Faddler's legal obligation to display his driver's license and the officer's right to examine it. In the face of Faddler's refusal to consent to the retrieval of his license by the officer, the trial court suggested as a solution to the perceived impasse that the officer should have arrested Faddler for failure to have a valid driver's license (Veh. Code, § 12500), "taken him down and booked him ... under 12500, and he could have proved he had a driver's license later on." We are constrained to observe that the suggested "solution" involves a needlessly cumbersome procedure wasteful of time and resources merely to verify what defendant Faddler at all times asserted and the officer had no cause to disbelieve: that Faddler had a valid driver's license located in the glove compartment. Moreover a license in the glove compartment is in the "immediate possession" of the driver within the meaning of Vehicle Code section 12951, thus giving no cause for arrest or citation under that provision.

The constitutional provisions securing the right of privacy protect against unreasonable official conduct. We are satisfied that no constitutional rights are implicated by the type of minimal intrusion which occurred here, given its limited objective, legitimate purpose, and the exigent circumstances which practically prohibited the accomplishment of that purpose in any other way than was done.

The judgment is reversed.

Evans, J., and Blease, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 11, 1982. Reynoso, J., did not participate therein.