[No. H008459. Sixth Dist. June 11, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
SANTIAGO V. GONZALEZ, Defendant and Appellant.

## COUNSEL

Barbara Michel, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver, Catherine A. Rivlin and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ELIA, J.—Appellant challenges the denial of his Penal Code section 1538.5 motion to suppress evidence. He was thereafter convicted of two counts of violating Health and Safety Code section 11351 (possession for sale of heroin and cocaine), two counts of violating Health and Safety Code section 11352, subdivision (a) (transportation of cocaine and heroin), and one count of violating Health and Safety Code section 11550 (being under the influence of heroin).

Appellant based his motion to suppress evidence on the events of an August night in 1990. At 10:15 p.m., two uniformed police officers in an unmarked car saw a gold Buick change lanes rapidly without signaling. The officers stopped the car in front of the registration office of a motel. The officers got out of their car and started to approach the Buick. Appellant, the passenger, started to get out of the Buick. One officer commanded him to get back inside the car.

The officer later testified that at that point he had no reason to suspect appellant was involved in any illegal activity. The officer ordered appellant into the car "[f]or the safety of both my partner and I. We didn't know why he was getting out."[1] Appellant got back in the car and shut the door. The officer then approached appellant and noticed certain symptoms which led to appellant's arrest for being under the influence of heroin. Standing at the patrol car while the officers conferred, appellant discarded some contraband.

■ Appellant contends he was unlawfully detained when the officer ordered him back into the car and all that followed was a product of that detention. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d

---

[1]At the hearing on the motion the officer testified "I told him to get back inside the car." At trial, the officer said he told appellant "Stay in the car. Get back in the car. Shut the door. Put your hands where I can see them." Also at trial, there was testimony that the neighborhood in which the stop took place is an area known for drug trafficking. Respondent's brief contains numerous references to the trial transcript to support their position but this information was not presented to the court ruling on the challenged motion.

497, 509, 100 S.Ct. 1870].) Appellant was detained when the officer told him to get back in the car. Any reasonable person would feel that he was not free to leave after this unequivocal verbal command.

■ Appellant argues that this detention must be justified by a reasonable suspicion of criminal activity. Respondent asserts that an officer conducting a lawful vehicle stop may request that the passenger remain in the car for officer safety reasons without separate probable cause to detain the passenger.

Respondent relies on *People* v. *Grant* (1990) 217 Cal.App.3d 1451 [266 Cal.Rptr. 587], which was also cited by the trial court as providing a basis for denying appellant's motion. In *Grant*, an officer stopped a car for speeding and received false information from both the driver and passenger about the driver's identity. He then requested identification from the passenger. This questioning led to his obtaining consent to search the car. On appeal, the passenger argued that his consent to the search was the product of an unlawful detention which began when the officer questioned him as to his identity. The court said that "the stop and detention of defendant was merely incident to his being a passenger in a lawfully stopped vehicle. [Citation]" and that "if the stop of the vehicle and its operator was lawful . . . there was a lawful basis to stop and detain defendant." (*Id.* at p. 1460.) However, the court refrained from holding that the passenger was actually detained, saying "we see no need to characterize the nature of the officer/ passenger contact where it does not go beyond the legitimate law enforcement practices incidental to the traffic stop." (*Ibid.*) Finally, the court said the defendant's "encounter" with the officer "independent of the stop" was a consensual one. (*Id.* at p. 1461.)

The *Grant* court cited *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777 [195 Cal.Rptr. 671, 670 P.2d 325], *Florida* v. *Royer* (1983) 460 U.S. 491 [75 L.Ed.2d 229, 103 S.Ct. 1319] and *INS* v. *Delgado* (1984) 466 U.S. 210 [80 L.Ed.2d 247, 104 S.Ct. 1758] to support its conclusion that, because law enforcement officers do not violate the Fourth Amendment in approaching an individual and asking if he is willing to identify himself, the questioning of defendant was not unreasonable and did not require separate justification. In *Grant*, as in those cases upon which it relied, the subject of the police attention was free to leave. Thus, although the court said that the passenger had been "detained," the opinion is grounded on the premise that the passenger was free to withdraw from this consensual encounter with the officer. In contrast, appellant here indicated an intention to leave the car by opening the door and beginning to step out but was compelled to remain to comply with the police command.

In *People* v. *Maxwell* (1988) 206 Cal.App.3d 1004 [254 Cal.Rptr. 124], the court upheld an officer's authority to order a passenger out of a lawfully stopped vehicle for officer safety purposes. The officer was making an early morning stop of a vehicle containing three occupants. The driver was unable to produce identification. The officer decided to interview the passengers separately to establish the identity of the driver. He asked one of the passengers to step out of the car. As the passenger alighted, he dropped some contraband. The court observed that "the seminal case of *Pennsylvania* v. *Mimms* (1977) 434 U.S. 106 [54 L.Ed.2d 331, 98 S.Ct. 330], [in which] the United States Supreme Court held the police could order the *driver* of a lawfully detained vehicle out of the car without an articulable suspicion that criminal activity was afoot or that the occupants of the vehicle posed a threat to police safety . . . left unresolved [the question] whether the same rule applies equally to passengers." (*Id.* at p. 1007, italics in original.) In concluding that the challenged request to alight was justified, the court noted that "the mere request to exit the vehicle . . . did not amount to a detention . . . ." The court specifically distinguished *People* v. *Spicer* (1984) 157 Cal.App.3d 213 [203 Cal.Rptr. 599], because in that case, the passenger "had no realistic choice to ignore the demand or to leave the scene." (206 Cal.App.3d at p. 1010, fn. 3.)

In *Spicer*, the defendant was a passenger in a detained car. As she sat on the passenger's side, an officer approached her and asked her to produce her driver's license. Illuminating her purse with his flashlight, he observed a handgun. The court determined that approaching the defendant as she sat in the passenger seat and requesting her to produce identification constituted a detention. The court determined that this detention was not justified by legitimate requirements of law enforcement. At the time the officer approached Spicer, the officer had no reasonable basis for suspecting her of any crime. The officer testified that his reason for asking the defendant for identification was to determine if she had a valid driver's license in the event the vehicle was released to her.

In *Spicer*, the defendant-passenger apparently chose to remain in the car during the driver's detention. The coercive circumstances of the officer's demand for identification transformed the contact into a detention. Because this inquiry was not justified by the legitimate requirements of law enforcement, the detention was unlawful. In *Grant*, the court held the passenger was not detained and thus a discussion of the justification for police questioning was unnecessary. In this case, appellant was detained and the justification urged is officer safety. On this record, to rule in respondent's favor would be to authorize the police detention of an individual with no articulable justification.

Although an "unparticularized suspicion that it would be better for the officer's safety for the passenger to alight is sufficient to justify such a request," this is so because a request to alight is a "minimal intrusion upon privacy." (*People* v. *Beal* (1974) 44 Cal.App.3d 216, 221 [118 Cal.Rptr. 272], citing *People* v. *Figueroa* (1969) 268 Cal.App.2d 721 [74 Cal.Rptr. 74].) This is not a case of a passenger whose presence is the natural result of his or her decision to accept the delay occasioned by the lawful stop of the vehicle in which he or she is traveling. We express no opinion as to the extent to which an officer may direct the position or activity of such a person. Inchoate concerns for officer safety may justify certain minimal intrusions. However, a reasonable, articulable suspicion of criminal activity is needed to justify a detention. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 21 [20 L.Ed.2d 889 906, 88 S.Ct. 1868]; *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) Being a passenger in a car stopped for a quick, unsignaled lane change is not sufficiently suspicious behavior to meet this standard.

Accordingly, the trial court erred in denying the motion to suppress. The judgment is reversed.

Capaccioli, Acting P. J., and Premo, J., concurred.